■ BRUCE MORRIS, Appellant, v 702 EAST FIFTH STREET HDFC, Respondent. [778 NYS2d 20]—

Order, Supreme Court, New York County (Edward H. Lehner,

J.), entered November 13, 2002, which denied plaintiff's motion to restore his case to the calendar and proceed to trial on his claim that his former subtenant was constructively evicted, to dissolve the preliminary injunction issued February 22, 1996, and to absolve plaintiff of the sound test requirement of the stipulation, unanimously reversed, on the law, without costs, the matter restored to the trial calendar, the trial court directed to order a sound test within a reasonable period of time, and the restrictions in the preliminary injunction on the use of musical instruments removed.

This action was precipitated in 1995 by defendant landlord's service upon plaintiff commercial tenant of a notice to cure and a notice of termination as a result of plaintiff's renovation of the leased storefront premises for the purpose of opening a coffee house/performance space, allegedly in violation of his lease. Plaintiff obtained a *Yellowstone* injunction staying termination of the lease and shortly thereafter commenced this action, seeking damages for loss of a subtenant due to defendant's failure to repair leaks at the premises. In March 1996, the court issued a preliminary injunction, which enjoined plaintiff from operating an unlicensed business in the building and restricted any performance of live music to string instruments and piano and to the hours of 4:00-9:00 P.M. on Fridays, Saturdays and Sundays.

In March 2000, the parties entered into a stipulation and order of partial settlement (the stipulation) which the court so ordered. The stipulation allowed plaintiff to open his coffee house/performance space after installing plumbing and soundproofing. Upon completion of the soundproofing work, plaintiff was to be given access to residential apartments in the building in order to conduct a sound test by which the experts of both parties would determine appropriate sound levels. Plaintiff's expert would then see to any additional work needed to make the soundproofing adequate, after which he would forward to defendant a certificate of completion. Upon receipt of such written notice, defendant would consent to and would move with plaintiff to modify the preliminary injunction to permit performances seven days a week. In the event further adjustments in the soundproofing were deemed necessary, the parties agreed to a procedure whereby plaintiff could continue to conduct his business subject to his compliance with defendant's board of directors' determination that further soundproofing was needed. During the two so-called "trial periods," the modified preliminary injunction would be held in abeyance and would only be in effect in the interim between a negative board determination and the next trial period. At such time that defendant's board

found the soundproofing to be adequate, the preliminary injunction would be held in abeyance until it was withdrawn by the court, with defendant's consent. If there was further concern about sound levels, after two trial periods, the parties would work together in good faith to resolve the matter quickly and informally. Plaintiff's case would be adjourned until October 11, 2000.

On October 13, 2000, the parties entered into a settlement agreement (the October 13 settlement) whereby plaintiff's action would be marked "settled," either party could request that the court reinstate the action, and, if reinstated, both parties would seek to bring it on for trial as soon as possible.

Subsequently, on or about June 24, 2002, plaintiff moved to restore the action to the calendar, to dissolve the preliminary injunction and to permit plaintiff to operate his business during similar hours as similar businesses on the grounds that defendant breached the stipulation's provisions allowing plaintiff to perform the sound test and that the injunction impermissibly restricted the First Amendment rights of the musicians and plaintiff.

Plaintiff moved timely for relief with regard both to the October 13 settlement and to the preliminary injunction. The settlement did not impose a time limit on either party moving to restore the matter to the calendar. Similarly, the CPLR provides that a party enjoined by a preliminary injunction may move at any time to vacate or modify it, upon notice to the other party (see CPLR 6314; Weinstein-Korn-Miller, NY Civ Prac ¶ 6314.03). We reject the contention that plaintiff waived his constitutional objections to the preliminary injunction, since plaintiff's primary purpose for entering the stipulation was to obtain either the vacatur or modification of the preliminary injunction.

The record establishes that plaintiff, in reliance on the stipulation, which was incorporated by reference into the settlement, withdrew his action for damages and performed in accordance with its provisions, whereas defendant did not. Plaintiff demonstrated that he had done the soundproofing work, that it was done in compliance with the applicable regulations, since no permit was necessary, and had attempted to arrange the agreed-upon sound test. Defendant, on the other hand, failed to demonstrate that it met its obligation to arrange the necessary access for plaintiff to perform the sound test upon completion of the soundproofing work. Thus, the record establishes that defendant's default precluded further performance of the agreement between the parties. Consequently, the motion court erred in

denying the motion to restore this matter to the trial calendar and thereby failing to enforce the parties' bargained-for agreement (*see Chemical Bank v Stahl*, 272 AD2d 1, 14-15 [2000]).

Plaintiff is also correct in his assertion that the preliminary injunction violates the First Amendment rights of the instrumental music performers in his coffee house by limiting their performances to string instruments (*see Chiasson v New York City Dept. of Consumer Affairs*, 132 Misc 2d 640, 643-646 [1986]). Since New York City noise control regulations (Administrative Code of City of NY § 24-241.1) limit the permissible volume of sound audible within a building outside of the room where amplified music is played, without regard to the instruments used, the preliminary injunction provision, like the city provisions at issue in *Chiasson*, deprives the musicians of their right to freedom of expression, as well as economic opportunities, without furthering a legitimate state interest. Concur— Nardelli, J.P., Saxe, Williams and Friedman, JJ.